IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-338-FL

| | |
|---|---|
| LOLAKSHI KALE and GURUSADAY DEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| | )     ORDER |
| UR M. JADDOU, Director, U.S. Citizenship and Immigration Services, and ANTONY BLINKEN, Secretary, U.S. Department of State, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

This matter is before the court on defendants' motion to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, alternatively, for summary judgment pursuant to Rule 56. (DE 16).[1] The issues have been briefed fully and in this posture are ripe for ruling. For the reasons that follow, defendants' motion is granted on the basis of lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

Plaintiffs, Indian nationals lawfully residing in Wake County, North Carolina, initiated this action August 27, 2022, against defendant Ur Jaddou, the Director of the U.S. Citizenship and Immigration Service ("USCIS"), alleging unreasonable delay under the Administrative Procedure

---

[1] Also pending is plaintiffs' motion for preliminary injunction. (DE 8). As the court concludes it lacks subject matter jurisdiction over this action, it does not reach plaintiffs' motion.

Act ("APA"), 5 U.S.C. §§ 701-706 in the adjudication of their employment-based adjustment of status applications for permanent residency. Plaintiffs thereafter filed the operative, amended complaint as a matter of course joining Anthony Blinken, the Secretary of the United States Department of State ("DOS"), as defendant and adding two claims of unlawful holding, also under the APA.[2] Plaintiffs seek an order compelling defendants to make a final decision on their adjustment of status applications and an order invalidating defendants' requirement that an immigration visa be immediately available at the time of approval, in addition to at the time of filing.

Prior to serving defendants, plaintiffs filed the instant motion for preliminary injunction, requesting that the court enjoin USCIS from requiring availability of a visa on approval and order the agency to issue a final decision on plaintiffs' applications on or before September 30, 2022, or in advance of their running out of immigration visa numbers for the 2022 fiscal year. Plaintiffs include as an exhibit a list of 450 employment-based applications filed on or after October 1, 2022, years after plaintiffs filed their applications, which already have been approved.

Defendants, upon being served, did not respond to plaintiffs' motion, but instead filed the instant motion to dismiss. In support of their motion, defendants rely upon a 1979 legal opinion regarding adjustment of status following amendment to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and declarations by: Andrew Parker ("Parker"), overseer of USCIS's policies for adjustment of status, who provides an overview of the visa allocation process; Trisha Cameron ("Cameron"), a supervisory immigration services officer, regarding filing and adjudication of plaintiffs' applications specifically; and Michael Valverde ("Valverde"), Associate

---

[2] Hereinafter, all citations to the complaint ("Compl.") are to the first amended complaint, unless otherwise specified.

Director of the Field Operations Directorate of the USCIS, concerning the day-to-day operations of USCIS field offices that decide adjustment of status applications.

Plaintiffs' response in opposition incorporates by reference a response brief filed in Museboyina v. Jaddou, et al., No. 4:22-CV-3169 (D. Neb). Defendants replied, annexing a district court decision dismissing complaint comparable to plaintiffs' here for lack of subject matter jurisdiction. Museboyina v. Jaddou, et al., No. 4:22-CV-3169, DE 44 (D. Neb. Feb. 1, 2023).

## STATUTORY AND REGULATORY FRAMEWORK

To provide context to the court's statement of facts, the court first sets forth a summary of the statutory and regulatory framework under INA. The INA provides for "adjustment of status," a mechanism by which USCIS may, in its discretion, "adjust" the status of a noncitizen already living in the United States to that of a lawful permanent resident, so long as: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). Upon approval of an application for adjustment, the Secretary of State is directed to "reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current." Id. § 1255(b).

The INA limits the number of immigrant visas available each fiscal year and allocates them in three broad categories. These categories are family-based, employment-based, and diversity. Id. §§ 1151–52; see id. § 1151(a). Section 1152 of the INA additionally restricts family-sponsored and employment-based visas made available to nationals of any one foreign state to seven percent "of the total number of such visas made available under such subsections in that fiscal year." Id. § 1152(a)(2). Within the employment-based ("EB") category, visa allotments are further broken

3

down into preference categories. Id. § 1153(b). The visas sought in this case are EB-2 and EB-3 preference categories. The EB-2 preference category is for "professionals holding an advanced degree" and "persons with exceptional ability." 8 U.S.C. § 1153(b)(2). The EB-2 preference category may receive 28.6% of the worldwide employment-based immigrant visas, plus any visa numbers "not required" for the EB-1 preference category.[3] 8 U.S.C. § 1153(b)(2)(A). The EB-3 preference category is for "skilled workers," "professionals," and "other workers." Id. § 1153(b)(3). The EB-3 preference category may receive 28.6% of the worldwide employment-based immigrant visas, plus any visa numbers "not required" for the EB-1 or EB-2 preference categories. Id.

Three steps are required of noncitizens seeking employment-based immigrant visas. First, the Department of Labor must issue a labor certification, certifying that the labor market can absorb the immigrant without affecting other workers' wages. See 8 U.S.C. § 1182(a)(5)(A)(i). Second, USCIS must approve the employer's immigrant visa petition, filed on Form I–140. See 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, the immigrant must obtain approval of his or her own I–485 application for adjustment of status. 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1). The USCIS will approve the Form I–485 and adjust the applicant's status only if a visa number was immediately available at the time of filing, and a visa number is immediately available at the time of adjudication. 8 C.F.R. § 103.2(b)(1).

DOS is charged with "limit[ing] the number of immigrant visas that may be issued and the number of adjustments of status that may be granted" such that they are consistent with the numerical restrictions set by Congress. 22 C.F.R. § 42.51. Congress also has provided for DOS

---

[3] Noncitizens eligible for the EB-1 preference category are those of "extraordinary ability;" "[o]outstanding professors and researchers," and "[c]ertain multinational executives and managers." 8 U.S.C. § 1153(b)(1).

to "make reasonable estimates of the anticipated number of visas to be issued during any quarter of any fiscal year . . . and to rely upon such estimates in authorizing the issuances of visas." 8 U.S.C. § 1153(g).

When demand for immigrant visas in a particular category, such as EB-2 and EB-3 visas for Indian nationals, exceeds the number of visas available for that category, DOS designates the category as "oversubscribed" and imposes a "visa availability cut-off date." (Parker Decl. (DE 17-1) ¶ 12). "The cut-off date is the priority date (the date upon which the underlying labor certification application was accepted for processing by the Department of Labor . . .) of the first applicant who could not be accommodated for a visa number." (Id.); see 8 C.F.R. § 204.5(d).

> For example: if there are 3,000 visa numbers available for China EB2 and USCIS and DOS have demand from 8,000 applicants, then DOS needs to establish a cut-off date so that only 3,000 visa numbers would be allocated. The cut-off is the priority date of the 3001st applicant. Only persons with a priority date earlier than the cut-off date for their country/category have a visa available and may be approved for adjustment of status or issued an immigrant visa in a family-sponsored or employment-based preference category.

(Parker Decl. (DE 17-1) ¶ 12); see INA § 245(a); 8 U.S.C. § 1255(a). "DOS publishes these cut-off dates in the Final Action Dates chart in the monthly Visa Bulletin." (Parker Decl. (DE 17-1) ¶ 12).

The visa bulletin and cut-off dates reflect DOS's "reasonable estimates of the anticipated number of visas to be issued" in each category. 8 U.S.C. § 1153(g); (Parker Decl. (DE 17-1) ¶ 14). When, however, demand exceeds DOS's estimate, the cut-off date may move backwards, meaning the new cut-off date is earlier than that previously published. (Parker Decl. (DE 17-1) ¶¶ 13-14). This backwards movement is called retrogression. (Parker Decl. (DE 17-1) ¶ 13 ("DOS retrogresses a particular Final Action Date to ensure that visa use remains within the limits established by Congress[.]"). When a particular category retrogresses, an applicant whose priority

5

date previously was before the cut-off date may find that her priority date following the retrogression is after the cut-off date, and thus she no longer is eligible for an adjustment of status. See C.F.R. § 103.2(b)(1). Thus, even if the applicant filed her I-485 while a visa was immediately available based upon her priority date and the then existing cut-off date, USCIS will not approve the adjustment following retrogression until the cut-off date once again progresses beyond the applicant's priority date. See id. Until that time, the application remains pending.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' complaint may be summarized as follows. Plaintiff Lolakshi Kale ("Kale") has lawfully resided in the United States for 13 years. (Compl. ¶¶ 76-77). Kale's employer filed for permanent labor certification August 26, 2014, which USCIS approved. (Id. ¶¶ 78-79). The date the labor certification was filed — August 26, 2014 — is plaintiffs' priority date for the purpose of determining visa availability. (Id. ¶ 80); see 8 C.F.R. §§ 204.5(d), 245.1(g)(2). Kale's employer initially filed a Form I-140 petition for an immigrant visa in the employment-based second preference category, EB-2. (See id. ¶ 81). As that category was oversubscribed as to Indian nationals, however, Kale's employer thereafter filed a second Form I-140 petition for an employment-based immigrant visa, this time in the third preference category, EB-3. (Id. ¶¶ 83-84). That second form was approved, and plaintiffs filed all Forms I-485 based upon the EB-3 Form I-140 petition October 21, 2020.[4] (Id. ¶¶ 84, 86).

According to plaintiffs, at the time they filed their I-485s, their priority date predated the cutoff date in the EB-3 category. (See id. ¶ 88). DOS has since retrogressed the cutoff date to

---

[4] The complaint does not include details of plaintiff Gurusday Dey's ("Dey") application for an employment visa. According to declaration by Cameron, plaintiff Dey filed a Form I-485 application to adjust status as the derivative spouse of plaintiff Kale. (Cameron Decl. (DE 17-2) ¶ 9).

6

April 1, 2012. (Id. ¶ 107). Plaintiffs' applications are thus now on adjudication hold. USCIS will not make a final decision on their applications and DOS will not issue a visa. (Id. ¶ 109).

**COURT'S DISCUSSION**

A. Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the petitioner bears the burden of showing that federal jurisdiction is appropriate when challenged by the respondent. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the factual basis for subject matter jurisdiction, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

When the respondent challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

B. Analysis

Plaintiffs allege under the APA that USCIS and DOS both are unlawfully refusing to issue a final adjudication of their I-485 applications based upon the requirement that an immigrant visa

7

be immediately available at the time of approval. Plaintiffs also challenge defendants' adjudication delays generally. Defendants seek dismissal, in part, on the basis that plaintiffs' claims amount to a challenge to the speed with which the USCIS adjudicates adjustment of status applications, which in turn is committed to USCIS discretion and is not subject to judicial review. The court agrees.[5]

The APA provides that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. "The reviewing court shall," in pertinent part, "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

There are two limitations on that authority as relevant here. First, the INA deprives courts "jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Second, the APA itself precludes review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The adjustment process here challenged is done pursuant to 8 U.S.C. § 1255, which provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the Attorney General, <u>in his discretion and under such regulations as he may prescribe</u>, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

---

[5] As the court dismisses the complaint on the basis of lack of subject matter jurisdiction, the court does not reach additional grounds for dismissal raised by defendants.

8 U.S.C. § 1255(a) (emphasis added).

Generally, based on the foregoing, "denial of an application for adjustment of status . . . is not amenable to judicial review" by United States District Courts. Lee v. U.S. Citizenship & Immigr. Servs., 592 F.3d 612, 619 (4th Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(B)(i)); see 8 U.S.C. § 1252(C) (courts of appeal retain jurisdiction to resolve constitutional claims or questions of law raised by aliens seeking discretionary relief). The critical question plaintiffs' claims raise, however, is whether the pace at which USCIS adjudicates claims is a discretionary action subject to the INA provision, 8 U.S.C. § 1252(a)(2)(B)(ii), divesting this court of jurisdiction.

As to this question, courts are split, including courts within this circuit. Compare Safadi v. Howard, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) ("[Section] 1252(a)(2)(B)(ii) precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds."), and Zhang v. Chertoff, 491 F. Supp. 2d 590, 593 (W.D. Va. 2007) (same); with Aslam v. Mukasey, 531 F. Supp. 2d 736, 740 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary has unlawfully delayed or withheld final adjudication of a status adjustment application.").

In determining that the INA provision, 8 U.S.C. § 1252(a)(2)(B)(ii), divested it of jurisdiction, the court in Safadi focused on

> whether subsection (ii)'s exclusion of any discretionary "action" from judicial review serves to preclude judicial review of the pace or nature of the process USCIS has implemented to execute its discretionary authority to adjust plaintiff's status. In other words, the question is whether the term "action" encompasses the pace at which USCIS processes an adjustment of status application.

466 F. Supp. 2d at 698. The court resolved the issue based upon the plain meaning of "action," defined as "an act or series of acts." Id. at 699 (quoting Black's Law Dictionary 28 (6th ed.1990)).

Applying that definition "under § 1252(a)(2)(B)(ii) the term 'action' encompasses <u>any</u> act or series of acts that is discretionary within the adjustment of status process." <u>Id.</u> (emphasis in original). "And, as § 1255(a) does not impose any limits on USCIS's discretionary authority over the adjustment of status process, it is clear that 'action' in § 1252(a)(2)(B)(ii) encompasses the <u>entire</u> process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." <u>Id.</u> (emphasis in original) ("Surely Congress, in passing § 1252(a)(2)(B)(ii), did not intend to preclude from judicial review all discretionary actions involved in the processing of an adjustment application except for the pace of such processing.").

The United States Court of Appeals for the Fifth Circuit, the only circuit court to have directly addressed the issue, determined that it lacked jurisdiction over a claim alleging unreasonable delay in the adjudication of an adjustment of status application on this same basis. The court reasoned that "[i]f Congress had intended for only the USCIS's ultimate decision to grant or deny an application to be discretionary—as distinguished from its interim decisions made during the adjudicative process—then the word 'action' would be superfluous. <u>Bian v. Clinton</u>, 605 F.3d 249, 253-54 (5th Cir. 2010), <u>vacated as moot</u>, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). "Instead, Section 1252 expressly exempts from judicial review any 'action' that is within the USCIS's discretion and is necessary to carry out the agency's statutory grant of authority." <u>Id.</u> at 254. "This includes establishing 'such regulations as [the agency] may prescribe' to carry out its statutory duty, such as 8 C.F.R. § 245.2(a)(5)(ii), which specifies that '[a]n application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State[.]'" <u>Id.</u>

The court finds the reasoning of Safadi and Bian persuasive and dispositive of plaintiffs' claims. See also Beshir v. Holder, 10 F. Supp. 3d 165, 174 (D.D.C. 2014) (similarly concluding that "[t]he term 'action' must encompass the discretionary pace at which the adjustment process proceeds because it encompasses the various other discretionary acts that constitute the process as a whole and that direct the pace of the process."); Namarra v. Mayorkas, 924 F. Supp. 2d 1058, 1064 (D. Minn. 2013) (finding no jurisdiction over claims challenging the pace of adjudication of status adjustment applications, collecting cases); Singh v. Napolitano, 909 F. Supp. 2d 1164, 1169 (E.D. Cal. 2012) (same).

District courts that have reasoned otherwise, upon which analyses plaintiffs rely in their opposition, have emphasized that no statutory provision in the relevant subchapters of the INA expressly gives the USCIS discretion associated with the pace of application processing. Said differently, courts reaching the contrary conclusion distinguish between the agency's discretion regarding the substance of an adjustment decision, which is provided for in the INA, and its authority to decide the pacing of that decision. See, e.g., Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."); Tang v. Chertoff, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007) ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the substance of an adjustment of status decision as discretionary, the pacing of such a decision is not so specified." (emphasis in original)); Geneme v. Holder, 935 F. Supp. 2d 184, 192 (D.D.C. 2013) ("[8 U.S.C. § 1252(a)(2)(B)(ii)] does not specify that USCIS shall have discretion to decide whether and when to adjudicate applications for adjustment of status, and so

the court retains jurisdiction over [a plaintiff's] claim that it has unreasonably delayed the adjudication.").

Such interpretation, however, "rests on the untenable distinction between the adjustment decision, which is clearly within USCIS' discretion under § 1255(a), and the processing required to render that decision." Zhang, 491 F. Supp. 2d at 593. "A holding that USCIS does not have discretion over the pace of application processing would lead to the illogical conclusion that USCIS must reach an unreviewable decision within a reviewable period of time." Id.

Additionally, though the INA does not expressly provide that USCIS has the discretion to decide its pace, also missing from the statutory framework are time constraints. That absence is "conspicuous" where "other immigration laws impose specific time constraints on adjudication." Id. (citing 8 U.S.C. § 1447(b)); see Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) ("[I]f Congress intended to confer jurisdiction on a federal court to review the pace of adjudication for adjustment of status applications, it would have expressly provided for a time limitation.").

A lack of reference to time limits for the processing of adjustment of status applications or the need for expedition in doing so is "consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion." Safadi, 466 F. Supp. 2d at 699; see El–Khader v. Monica, 366 F.3d 562, 567-68 (7th Cir. 2004) (dismissing complaint for lack of subject matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) where Attorney General has statutory discretion to revoke a visa petition and no legal standard exists to evaluate the exercise of this discretion).

Finally, along the same lines, where the pace of adjudication of adjustment of status applications is committed to USCIS discretion by law, the APA also excludes review. See 5 U.S.C. § 701(a)(2) (precluding review of "agency action [that] is committed to agency discretion by law"); see also Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 544 (1978) ("[T]he very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure.").

In sum, the court lacks jurisdiction under both the INA provision, 8 U.S.C. § 1252(a)(2)(B)(ii), and the APA provision, U.S.C. § 701(a)(2).

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 16) is GRANTED. Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Plaintiffs' motion for preliminary injunction (DE 8), accordingly, is TERMINATED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 2nd day of August, 2023.

_/s/ Louise W. Flanagan_
LOUISE W. FLANAGAN
United States District Judge